Good morning, everyone. All right, before we get started, Judge Thomas and I would like to extend a very warm welcome to Judge Sidney Fitzpater from the U.S. District Court for the Northern District of Texas. Thank you. You'll be sitting with us all week, and we're happy to have you. I'm going to go through the calendar in the order that the cases are listed. The first two matters have been submitted on the briefs and record. That's In-Rae Ruhal-Feinstein and Desmond v. Charter Communications. So the first case up for argument is CMB Developers v. Associated Industries Insurance Company. When you're ready, counsel. May it please the Court. Judge Thomas, Judge Nguyen, and Judge Fitzwater, good morning. Thank you for the opportunity to advocate CMB Developers, Inc.'s position in this appeal. This case presents the question of interpreting the exclusion designated as Fire Suppression System M-Installation. To determine whether it is applicable to a loss occasioned by a faulty design rather than faulty installation of the system. CMB's position is that this exclusion is not applicable because an installation exclusion is never triggered by a loss arising from a design defect. The question may be raised, well, why isn't Radex's design work the completed operation that triggers the exclusion? Well, because design of the product is an entirely separate activity from... Let me ask you this. Are you in between a rock and a hard place here? Because if you are going to argue that this falls within design services and therefore the installation exclusion isn't applicable, then you've got the problem of having it fall under professional services. Well, I would disagree with that because I don't think that the professional services endorsement applies either. As your Honor knows, it's CMB's position that AIIC waived this defense during the first motion for summary judgment. That waiver is important because it caused the plaintiff not to work up that endorsement issue. Assuming that we get past waiver, then how does the exclusion from professional services not apply under your argument? So the total professional services exclusion has been primarily applied where the injury is concurrent with the rendering of the professional service. For example, the ear piercing case where the professional was rendering that service when the patient was injured. Also the doctor who was applying the laser treatment who burned the patient. This loss occurred two years after completion of the construction as a result of a latent design defect. We don't believe that this particular exclusion affects the completed operations coverage. Well, I suppose I don't understand the limitation that you want to put on the word design because I'm struggling to think of what kind of injuries would necessarily occur just during the design process. It would seem that it's how the design ultimately isn't put into effect what happens later. So can you explain that a bit more? Right. I think that the question itself begs the answer because this particular exclusion just doesn't apply to the design. I don't know why the drafters of the insurance company or the insurance services drafted the exclusion the way that they did. But the first exclusion is fire suppression systems dash installation relating only to installation. The second one, the total professional services, has to do with the areas of expertise defined by the exclusion itself. So that exclusion applies to engineers, architects, doctors, lawyers, accountants, insurance representatives, and investment professionals. Nowhere are the professional services of trades that move the construction needs forward identified in the total professional services. Moreover, the policy and its exclusions have to be read as a whole and have to be read consistently. We point out in our papers that the exclusion and the contractor's professional liability defines professional services not to include services within the construction needs, methods, techniques, sequences, and procedures. So if the total professional services were applied in the way that the insurance company would like it applied, it would apply to every facet of construction needs and methods. For example, window installers. Nobody would argue that a window installer is not a professional service. I certainly can't install my own windows. I have to get a professional to come out and do that for me. However, the services of a window installer on a construction site merely moves the construction forward. I have, in my preparation for this argument, divided these professions into boots on the ground versus white-collar work. Engineers, surveyors, lawyers, while they may visit the construction site, they are not day-to-day laborers who move the construction needs and methods forward. The total professional services exclusion were applied in the manner that the insurance company is arguing for its application would render this policy a nullity for every subcontractor who works on this project. That is a complete contradiction with the declarations page on this particular policy, which specifically includes the work of subcontractors. So you have a dichotomy between a declarations page that provides coverage for professional services such as window installers, fire suppression creators and installers, and then you have an argument by the insurance company that this total professional services exclusion wipes that out. It nullifies. I'm sorry for interrupting. I have two questions for you specifically on the record, and I want to make sure that there's enough time to give you an opportunity to answer that. The district court's order had a footnote, footnote two, that talks about the argument pertaining to Cumas Council, and the district court said the only evidence provided in this motion of a potential conflict is the e-mail where council used the term installations that have selection. Is there any evidence beyond what the district court cited here, and if so, where can I find that in the record? It was council. I hope I'm addressing the precise question that the court has asked. My question is, is the district court correct that the only evidence of a potential conflict is this e-mail in which council used the term installation versus selection? Oh, no, no, no. The Cumas representation is based on the fact that the issue in the underlying action, which was the cause of the fire suppression's failure, was the same issue as in the coverage litigation. I understand that argument. I just want to confirm whether there's any evidence beyond this issue that the district court flagged. I didn't see any, so if there is, you can give me an excerpt of record reference, and I can look it up afterwards. I'm sorry, I don't know that I can do that at this moment. If it is an important issue, I would like the opportunity to address it for the court, but I can't. If you want to save a little bit of time for rebuttal, you can come back on rebuttal and give me your record. Okay, I will do that. Yes, could I reserve maybe three minutes for rebuttal? All right, I'll try to help you out, but keep your eye on the clock as well. I have one other question regarding the record. There's reference to fabrication of the fire sprinkler, and I don't know what that means. Is there anything in the fabrication process beyond just picking the right part? The fabrication process is not well defined within the record or within the briefing. I don't think anybody addressed it. I think we all assumed that. As a factual matter, do you know whether fabrication, whether somebody actually like made the part, or is it commercially available, you design it, you pick the right part? That's my impression, and I wanted to confirm that that's accurate. It is accurate that the designer will use prefabricated parts, including the sprinkler head, which Radix did not manufacture. It selects that sprinkler head from a variety of selections by different manufacturers. Does that address the court's question? Yes, it does. Thank you. Thank you. I wanted to take one minute, literally one minute, to address the duty to defend. The duty to defend was clearly present. The Conaway complaint was so broadly planned that it hit almost every facet of construction, and importantly, the plaintiff himself did not know at the time that the complaint was filed, and the complaint was tendered to the insurance company, what had caused the malfunction of the sprinkler. For example, it could have been a spike in water pressure, which was one of the issues in the underlying action. Did it spike, and therefore cause this mechanism to fail? When the insurance company refused to defend, despite the broad allegations, we believe that the contract was breached, and we believe that because there's nothing in the claims file that reflects an adequate investigation and a resolution of the issue of cause, then the breach was in bad faith. Thank you, Judges Thomas, Nguyen, and Fitzwater, for permitting me to advocate on behalf of CMB. Thank you, counsel. Mr. Baldwin. Good morning, Your Honors. The question presented by this coverage dispute is what was CMB's connection to the water loss, and there was never any dispute about that. CMB's connection was that it had installed a fire sprinkler system, which discharged even though there was no fire. Counsel just mentioned that there may have been a possibility of the sprinkler discharged because of this spike in water pressure, but CMB wouldn't have been responsible for the spike in water pressure. CMB's link to this loss was the fact that it had installed a fire suppression system, and that was a fact that my client learned during its initial claim investigation. And even in CMB's briefing, it acknowledges that it was never disputed that CMB installed a fire suppression system. That is sufficient to implicate the exclusion for designated construction or contractor operations. The specific contractor operation that was implicated in this loss was fire suppression system installation by CMB. CMB wants to somehow use the word installation to limit the scope of the exclusion. I'd just like to point out that because this policy is issued to a builder contractor, it necessarily is focusing on work performed by that insured. And if the court looks at all the different operations identified in the exclusion, you'll see that each one is described as work, not a product. Because it was the understanding by the insurance company that CMB did not manufacture a product. It meant it constructed parts. And so, for example, the exclusion talks about construction or project that is doing dike, levee, or reservoir work. Fireproofing of structures. All of this is the type of work being performed by CMB. And with respect to fire suppression systems, the type of work that was being excluded was CMB's installation of such a system. Counsel, as I understand it, you moved for summary judgment based on that exclusion initially. But the district court held that there was a fact issue regarding installation. Is that correct? The court identified a travel issue fact. I believe when the court ruled on the subsequent summary judgment motion, the court got it right. There was no travel issue fact. On that motion, you also urged the total professional services exclusion. We did that. So where I'm going is what do we do with the potential fact issue involving the first exclusion? Well, I don't believe there was a potential fact issue. Because the only relevant fact is did CMB install the fire suppression system? And that was undisputed. There would have been a fact issue if there was some dispute about whether CMB had installed it or subcontracted. But that was not disputed. It's true that it wasn't clear why the fire suppression system went off prematurely. But that fact was immaterial to the designated construction or contractor operations exclusion. It doesn't matter why the CMB is liable due to it having installed a fire suppression system. All that matters is that that is why CMB was liable or potentially liable. The fact that it installed a fire suppression system that went off and caused damage. It's true that my clients invoked the total professional services exclusion in a sense as a rebuttal to CMB's argument or CMB's attempt to draw a distinction between installation and design. It's always been our position that the selection of the parts that were installed is part of installation. So we didn't need to get to the total professional services exclusion. But if the court were to accept CMB's argument that there's some distinction, our point is that doesn't get them where they want to go. Because they're now relying on a distinct professional service that is designing a component of this project. The argument that CMB has made in its final brief and argument today seems to be that the total professional services exclusion only applies during quote ongoing operations. There's a distinction between ongoing operations and completed operations. And this is, this law arose out of the hazard called completed operations because it happened after CMB had finished its work. But the exclusion, the total professional services exclusion is not limited to the ongoing operations hazard. It specifically says it applies, it debars all coverage for bodily injury or body damage or personal injury. Furthermore, it would make sense to apply it solely to ongoing operations because the exclusion specifically applies to the preparing of designs and specifications. And as the court remarked earlier, a loss never happens during the design phase. It only happens after the design has been implemented. So it would make no sense to construe the total professional services exclusion as limited to the ongoing operations hazard. Since it necessarily applies to the completed operations hazard, it applies to this loss. Furthermore, it specifically, well it applies generally to any professional service, but it goes on to say this includes, although it's not limited to, preparing, approving, recommending designs, specifications, etc. And that seems to be exactly what CMB is trying to rely on. Here is Radix's selection of a specific component part for this fire suppression system. It's a design of the fire suppression system by using a part that was inappropriate for this location. So I just don't see how they get beyond the total professional services exclusion if they succeed in drawing a distinction between installation of the system and design of the system. But I don't think they do that because the installation is what caused the problem here. They installed the wrong part. Unless the court has any questions, I'll submit. I have a question about the duty to defend. Would you address opposing counsel's position on that? Yes. The duty to defend, we acknowledge that the duty to defend arises if there is a potential for coverage. But it does not arise if, as a matter of law, the facts alleged or facts otherwise known to the insurance company establish that the claim is excluded. And that's our situation here. The facts alleged in the complaint and the facts shared with my clients by CMB are that the damages for which Conway was seeking recovery were due to the discharge of water from the indoor fire suppression system. And CMB's connection with that system was that it had installed it. That's all you need to know for the contractor's operations exclusion to apply. It doesn't matter why the system failed. What matters is that the loss was due to the fire suppression system which CMB had installed. So our position is there may have been facts that were in dispute in the underlying litigation, but none of those facts were material to the coverage decision. All material facts were undisputed and brought to claim within the exclusion. Therefore, there was never a potential for coverage. All right. Thank you, counsel.  May I continue, Your Honor? Yes, please. Unfortunately, in the time that I had, I was not able to locate the email from myself to defense counsel. Requesting he was counsel, I do believe it was part of the district court's record. I was just not able to locate it in the appendix submitted to this court. All right. I wanted to address a couple of the points that counsel made. Counsel said that if selection of the parts is part of, he said that selection of the parts is part of installation and not design. If it's part of installation, then what is the design component, and why does the defense expert say that selection of the components is part of design? Secondly, as to the total professional services issue, counsel made the point that preparing of designs and specifications for professional service, but all of these trades prepare designs and specifications. A window installer doesn't come onto the job site without taking measurements and making a very intentional effort to place the windows in a way that they won't leak, etc. I don't know what all the components are, but all of them prepare change orders, invoices, design specifications, etc. None of these professionals who have boots on the ground come in cold and just do their work. They all have to have some form of specification pursuant to which they're doing their work. If the total professional services were interpreted in the way that defense counsel suggests, again, it would wipe out the policy. With that, I see I'm able to submit. Thank you very much, your honors. Thank you very much, counsel, to both sides for your argument today. We appreciate it. The matter is submitted, and the decision will be issued in due course.
judges: NGUYEN, THOMAS, Fitzwater